IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § § § § | Chapter 11 |
| | | Case No. 24-60018 (CML) |
| **NITRO FLUIDS, LLC,** *et al.* | | |
| | | (Jointly Administered) |
| Debtors.[1] | | |
| | | *Re Docket No. 146* |

**STIPULATION AND AGREED ORDER AUTHORIZING MODIFICATION TO SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

Debtors Nitro Fluids, LLC ("Fluids"), NFH Leasing, LLC, and Straitline Pumps, LLC (collectively with Fluids and NFH Leasing, LLC, the "Debtors"), as debtors and debtors-in-possession in the above-captioned bankruptcy cases (collectively, the "Bankruptcy Case"), together with the Official Committee of Unsecured Creditors (the "Committee"), and Simmons Bank ("Lender," and collectively with the Debtors and the Committee, the "Parties"), have agreed to this stipulation (this "Stipulation") authorizing modification to the Debtors' postpetition financing. In support of the Stipulation, the Parties represent as follows:

**RECITALS**

WHEREAS, the Debtors filed *Debtors' Emergency Motion for Entry of Interim and Final Orders (a) Authorizing the Debtors to Obtain Postpetition Financing, (b) Authorizing the Debtors to Use Cash Collateral, (c) Granting Liens and Providing Claims with Superpriority*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are Nitro Fluids, LLC (2119); NFH Leasing, LLC (9218); Straitline Pumps, LLC (4168). The location of the service address for Nitro Fluids, LLC and NFH Leasing, LLC is: 117 Broadway, Nordheim, TX 78141. The location of the service address for Straitline Pumps, LLC is: 13750 San Pedro Ave., Ste. 560, San Antonio, Texas 78232.

*Administrative Expense Status, (d) Granting Adequate Protection, (e) Modifying the Automatic Stay, (f) Scheduling a Final Hearing, and (g) Granting Related Relief* [Docket No. 18] (the "<u>DIP Motion</u>"); and

WHEREAS, the Court entered the *Interim Order (a) Authorizing the Debtors to Obtain Postpetition Financing; (b) Authorizing the Debtors to Use Cash Collateral, (c) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (d) Granting Adequate Protection, (e) Modifying the Automatic Stay, (f) Scheduling a Final Hearing, and (g) Granting Related Relief* [Docket No. 44] (the "<u>Interim Order</u>"); and

WHEREAS, the Court entered the *Final Order (a) Authorizing the Debtors to Obtain Postpetition Financing; (b) Authorizing the Debtors to Use Cash Collateral, (c) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (d) Granting Adequate Protection, and (e) Modifying the Automatic Stay* [Docket No. 146] (the "<u>Final Order</u>" and together with the Interim Order, the "<u>DIP Orders</u>"); and

WHEREAS, Lender made a $12,000,000 loan ("<u>Loan</u>") to the Debtors under and pursuant to the terms and provisions of that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated June 17, 2024, between Lender and Borrowers (the "<u>Original DIP Credit Agreement</u>"), which was authorized by the DIP Orders; and

WHEREAS, Lender and the Debtors desire to modify certain terms and provisions of the Original DIP Credit Agreement and the other related documents executed by Borrowers and/or Guarantors pertaining to, evidencing, or securing the Loan (as amended, the "<u>DIP Credit Agreement</u>")[2], as set forth by the terms of that certain Amendment to Senior Secured Superpriority

---

[2] Capitalized terms used but not defined in this Stipulation and Order shall have the meanings ascribed to such terms in the Final DIP Order.

Debtor-in-Possession Credit Agreement, substantially in the form attached hereto as **Exhibit A** (the "DIP Amendment");

WHEREAS, the DIP Amendment contemplates modifications to the Original DIP Credit Agreement that are immaterial changes (*e.g.*, restatement of obligations), changes that are favorable to the Debtors (*e.g.*, decrease in the applicable rate of interest), or changes that are otherwise contemplated by the terms of the Original DIP Credit Agreement (*e.g.*, incremental loan commitment);

NOW, THEREFORE, the Parties request approval and entry by this Court of this Stipulation to authorize entry into the DIP Amendment.

## STIPULATION AND ORDER

1. Pursuant to this Stipulation and the Court's approval and entry thereof, the Debtors and the Lender are authorized to enter into the DIP Amendment.

2. The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Amendment and to incur and to perform in accordance therewith, and to execute and deliver all instruments, certificates, guaranties, agreements, and documents that may be required or necessary for the performance by the Debtors in connection with the DIP Credit Agreement.

## NOTICE

3. The Debtors have provided notice of this Stipulation to: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims (on a consolidated basis); (c) counsel to the DIP Lender, Simmons Bank NA, Winstead PC (Attn: Jason Enright); (d) counsel to Blue Sky Bank, (i) Drummond Law, PLLC (Attn: Garry M. Gaskins) and (ii) GableGotwals (Attn: Sidney K. Swinson); (e) the Committee; and (f) all parties that have filed

a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. Based on the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

SIGNED this _____ day of _____, 2024

                                                     **CHRISTOPHER M. LOPEZ**
                                                     **UNITED STATES BANKRUPTCY JUDGE**

**STIPULATED AND AGREED TO BY:**

/s/ *Jason A. Enright*
**WINSTEAD PC**
Jason A. Enright (Texas Bar No. 24087475)
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 telephone
(214) 745-5390 facsimile
Email: jenright@winstead.com

COUNSEL FOR SIMMONS BANK

/s/ *Joshua N. Eppich*
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua N. Eppich (Texas Bar No. 24050567)
Eric T. Haitz (Texas Bar No. 24101851)
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: eric.haitz@bondsellis.com

-and-

Ken Green (Texas Bar No. 24050698)
402 Heights Blvd.
Houston, Texas 77007
(713) 335-4990 telephone
(713) 335-4991 facsimile
Email:  ken.green@bondsellis.com

COUNSEL FOR THE DEBTORS

/s/ *Zachary McKay*
**JACKSON WALKER LLP**
Genevieve M. Graham (TX Bar No. 24085340)
Zachary McKay (TX Bar No. 24073600)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: ggraham@jw.com
Email: zmckay@jw.com

CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS

## CERTIFICATE OF SERVICE

I certify that on September 5, 2024, a true and correct copy of the foregoing document was served via the Court's CM/ECF system.

/s/ *Eric T. Haitz*
Eric T. Haitz

# **EXHIBIT A**

*DIP Amendment*

AMENDMENT TO SENIOR SECURED SUPERPRIORITY
DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT (this "Agreement") is entered into as of September __, 2024, by and between NITRO FLUIDS, LLC, a Texas limited liability company ("Fluids"), NFH LEASING, LLC, a Texas limited liability company ("Leasing"), and STRAITLINE PUMPS, LLC, a Texas limited liability company ("Straitline", and collectively, with Fluids and Straitline, "Borrowers" and each a "Borrower"), and SIMMONS BANK, an Arkansas state chartered bank, successor by merger to Spirit of Texas Bank, SSB ("Lender").

RECITALS

WHEREAS, Lender made a $12,000,000 loan ("Loan") to Borrowers under and pursuant to the terms and provisions of that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated June 17, 2024, between Lender and Borrowers (the "Original DIP Credit Agreement," and collectively with this Agreement "DIP Credit Agreement"); all capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the Original DIP Credit Agreement;

WHEREAS, in connection with the Loan, Borrower caused each of Nitro Construction, LLC and Nitro Downhole, LLC (collectively, the "Guarantor") to execute and deliver to Lender that certain Guaranty Agreement dated as of June 17, 2024 ("Guaranty"), which guaranteed certain liabilities and obligations of Borrower, as more particularly described therein;

WHEREAS, on June 17, 2024, the Bankruptcy Court entered its *Final Order (a) Authorizing the Debtors to Obtain Postpetition Financing; (b) Authorizing the Debtors to Use Cash Collateral; (c) Granting Liens and Providing Claims with Superpriority Administrative Expense Status; (d) Granting Adequate Protection; and (e) Modifying the Automatic Stay* (the "DIP Order"), at Docket No. 146 on the docket for the Chapter 11 Cases, whereby the Bankruptcy Court, among other things, authorized the Loan to the Borrowers pursuant to the terms and provisions of the Original DIP Credit Agreement;

WHEREAS, Lender and Borrowers desire to modify certain terms and provisions of the Original DIP Credit Agreement and the other related documents executed by Borrowers and/or Guarantors pertaining to, evidencing, or securing the Loan; and

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrowers hereby agree as set forth herein.

1. Amendment Effective Date.  The terms of the Agreement shall become effective on the date of entry of final order of the Bankruptcy Court approving the amended terms of the Loan in this Agreement (the "Amendment Effective Date").

2. DIP Facility. Recital C of the DIP Credit Agreement is amended to be as follows:

Borrowers seek to obtain a post-petition debtor-in-possession credit financing (the "DIP Facility") in the total aggregate amount of $14,000,000, consisting of (i) a new money multiple draw term loan credit facility in an aggregate amount not to exceed $8,000,000 (the "New Money Facility"), which shall consist of $1,500,000 in initial funding ("Initial Funding"), in accordance with the Interim DIP Order (defined below), and up to a maximum amount of $6,500,000 in additional funding; and (ii) a roll up of outstanding obligations due and owing to Lender as of the Petition Date under the Pre-Petition Loan Documents (defined below), in the amount of $6,000,000 (the "Roll-Up Facility"), which shall be converted into an equivalent principal amount of credit advanced under the DIP Facility, following entry of the Final DIP Order (as defined below; as same may be amended in the future), in accordance with the provisions, terms and conditions set forth in the Final DIP Order, this Agreement, and the other Loan Documents (as defined below).

3. **Maturity Date**. Under Section 1.2 of the DIP Credit Agreement, "Maturity Date" is amended to be December 31, 2024.

4. **Applicable Rate**. Under Section 1.2 of the DIP Credit Agreement, "Applicable Rate" is amended to be the Wall Street Journal "Prime Rate"; provided, however, the Applicable Rate from the Closing Date until the Amendment Effective Date shall be the Applicable Rate as defined in the Original DIP Credit Agreement, and the Applicable Rate, as amended herein, shall begin on the Amendment Effective Date.

5. **New Money Loan**. Section 2.1(a) of the DIP Credit Agreement shall be as follows:

New Money Loan. Subject to the terms and conditions of this Agreement and the Final DIP Order, Lender shall loan up to the maximum amount of $8,000,000 (which includes the Initial Funding), to Borrowers in one or more Advances from time to time during the Commitment Period the amounts requested by Borrowers in each Request for Advance or any other Advances by Lender, each in accordance with the terms of this Agreement and any other Loan Document (collectively, the "New Money Loan"); provided, however, that Lender shall not be obligated to make any Advance or Advances (i) during the existence of an Event of Default, or (ii) in excess of the Available Commitment Amount then in effect. The Advances made under this Section 2.1(a) shall be evidenced by the New Money Note. Notwithstanding the principal amount stated on the face of the New Money Note, the amount of principal actually owing on the Note at any given time shall be the aggregate of all Advances theretofore made to Borrowers, less all payments of principal by Borrowers theretofore actually received by the holder thereof. During the Commitment Period, interest on the New Money Loan shall accrue daily at the Applicable Rate and shall be due and payable on the Termination Date (however occurring). The unpaid principal balance of the New Money Loan plus accrued but unpaid interest thereon shall be due and payable in full on the Termination Date. The amount of the New Money Loan made or Advanced under Sections 2.1(a) or 2.5 that is repaid or prepaid may not be reborrowed.

6. <u>Amended and Restated New Money Note</u>. Concurrently with the execution hereof, Borrowers shall execute an Amended and Restated New Money Note, as attached hereto as <u>Exhibit A</u>, which shall be substantially identical to the original New Money Note, except that the principal amount stated on the face of thereof shall be $8,000,000.00. Any and all references in the DIP Credit Agreement or other Loan Documents shall be deemed to refer, as of the Amendment Effective Date, to the Amended and Restated New Money Note.

7. <u>Negative Covenant</u>. Section 7.14 of the DIP Credit Agreement shall be as follows:

<u>Distributions</u>. Except with respect to the Carve Outs (as defined in the Final DIP Order), the Borrowers, and/or the bankruptcy estates of the Borrowers in the Chapter 11 Cases, shall not make distributions to any creditor, on account of claims under sections 502 or 506 of the Bankruptcy Code, until payment of outstanding amounts under the DIP Facility have been fully satisfied and the Commitment has been terminated, unless otherwise consented to in writing by the Lender.

8. <u>Modification</u>. Notwithstanding the modification of the Loan Documents pursuant to the terms of this Agreement, all of the Loan Documents (including, without limitation, the Note) are deemed to be continuing in full force and effect (and are not extinguished). All monies due and payable under the Note shall continue to be due and payable in accordance with the terms of the Note, as amended hereby. Nothing herein contained shall affect or impair the validity or priority of the Liens or any of the other Loan Documents, which are deemed to be continuing in full force and effect (and are not extinguished).

9. <u>Acknowledgement of Borrower</u>. Except as otherwise specified herein, the terms and provisions hereof shall in no manner impair, limit, restrict or otherwise affect the obligations of Borrowers to Lender, as evidenced by the Loan Documents. Borrowers hereby acknowledge, agree and represent that (i) Borrowers are indebted to Lender pursuant to the terms of the Note, as modified hereby; (ii) the liens, security interests and assignments created and evidenced by the Loan Documents are, respectively, valid and subsisting liens, security interests and assignments of the respective dignity and priority recited in the Loan Documents; (iii) there are no claims or offsets against, or defenses or counterclaims to, the terms or provisions of the Loan Documents, and the other obligations created or evidenced by the Loan Documents; (iv) the representations and warranties contained in the Loan Documents are true and correct representations and warranties of Borrowers, as of the date hereof; (vi) Borrowers are not in default and no event has occurred which, with the passage of time, giving of notice, or both, would constitute a default by Borrowers of Borrowers' obligations under the terms and provisions of the Loan Documents, and (vii) Lender is not in default and no event has occurred which, with the passage of time, giving of notice, or both, would constitute a default by Lender of Lender's obligations under the terms and provisions of the Loan Documents. Borrowers waive, discharge, and forever release Lender, Lender's employees, officers, directors, attorneys, stockholders, and their successors and assigns, from and of any and all claims, causes of action, allegations or assertions that Borrowers have or may have had at any time up through and including the date of this Agreement, against any or all of the foregoing, regardless of whether any such claims, causes of action, allegations or assertions are known to Borrowers or whether any such claims, causes of action, allegations or assertions arose as a result of Lender's actions or omissions in connection with the Loan Documents, or any amendments, extensions or modifications thereof, or Lender's administration of the debt evidenced

by the Loan Documents or otherwise, including any claims, causes of action, allegations or assertions resulting from Lender's own negligence, except and to the extent (but only to the extent) caused by lender's gross negligence or willful misconduct.

10. <u>Joinder of Guarantor</u>.  By their execution hereof, each Guarantor with respect to itself only hereby (i) acknowledges and consents to the terms and provisions hereof; (ii) ratifies and confirms the Guaranty, including all interest and costs of collection, to or for the benefit of Lender; (iii) agrees that the Guaranty is and shall remain in full force and effect and that the terms and provisions of the Guaranty cover and pertain to the Loan, Note, Liens and other Loan Documents, as modified hereby; (iv) after giving effect to this Agreement, acknowledges that there are no claims or offsets against, or defenses or counterclaims to, the terms and provisions of the Guaranty or the other obligations created and evidenced by the Guaranty; (v) certifies that any representations and warranties contained in the Guaranty remain true and correct representations and warranties of Guarantor as of the date hereof; and (vi) after giving effect to this Agreement, acknowledges that Lender has satisfied and performed its covenants and obligations under the Guaranty and the other Loan Documents, and that no action or failure to act by or on behalf of, Lender which occurs prior to this Agreement becoming effective has or will give rise to any cause of action or other claim against Lender for breach of the Guaranty or other Loan Documents or otherwise.  Guarantor waives, discharges, and forever releases Lender, Lender's employees, officers, directors, attorneys, stockholders, and their successors and assigns, from and of any and all claims, causes of action, allegations or assertions that Guarantor has or may have had at any time up through and including the date of this Agreement, against any or all of the foregoing, regardless of whether any such claims, causes of action, allegations or assertions are known to Guarantor or whether any such claims, causes of action, allegations or assertions arose as a result of Lender's actions or omissions in connection with the Loan Documents, or any amendments, extensions or modifications thereof, or Lender's administration of the debt evidenced by the Loan Documents or otherwise, including any claims, causes of action, allegations or assertions resulting from lender's own negligence, except and to the extent (but only to the extent) caused by lender's gross negligence or willful misconduct.

11. <u>No Waiver of Remedies</u>.  Except as may be expressly set forth herein, nothing contained in this Agreement shall prejudice, act as, or be deemed to be a waiver of any right or remedy available to Lender by reason of the occurrence or existence of any fact, circumstance or event constituting a default under the Note or the other Loan Documents.

12. <u>Costs and Expenses</u>.  All Lender's costs and expenses in connection with the preparation and execution hereof, and the consummation of the transaction contemplated hereby, including, but not limited to, all costs associated with negotiations that preceded this Agreement, all costs in the Chapter 11 Cases, and fees and expenses of legal counsel to Lender with respect to the same constitute post-petition obligations of Borrowers, expressly included in and governed by Paragraph 8 of the Final DIP Order.

13. <u>Additional Documentation</u>.  From time to time, Borrowers and Guarantor shall execute or procure and deliver to Lender such other and further documents and instruments evidencing, securing, or pertaining to the Loan or the Loan Documents as shall be reasonably requested by Lender so as to carry out more effectively the purposes of this Agreement and the other Loan Documents.

14. <u>Time</u>.  Time is of the essence in the performance of the covenants contained herein and in the Loan Documents.

15. <u>Binding Agreement</u>.  This Agreement shall be binding upon the successors and assigns of the parties hereto; provided, however, the foregoing shall not be deemed or construed to (i) permit, sanction, authorize or condone the assignment of all or any part of the Collateral or any of Borrower's rights, titles or interests in and to the Collateral except as expressly authorized in the Loan Documents or order of the Bankruptcy Court, or (ii) confer any right, title, benefit, cause of action or remedy upon any person or entity not a party hereto, which such party would not or did not otherwise possess.

16. <u>Headings</u>.  The section headings hereof are inserted for convenience of reference only and shall in no way alter, amend, define or be used in the construction or interpretation of the text of such section.

17. <u>Recitals</u>.  The recitals contained above are incorporated herein by reference for all purposes and the parties hereby irrevocably and unconditionally acknowledge and agree that such recitals are true, correct and complete in all material requests.

18. <u>Construction</u>.  Whenever the context hereof so requires, reference to the singular shall include the plural and likewise, the plural shall include the singular; words denoting gender shall be construed to mean the masculine, feminine or neuter, as appropriate; and specific enumeration shall not exclude the general, but shall be construed as cumulative of the general recitation.

19. <u>Severability</u>.  If any clause or provision of this Agreement is or should ever be held to be illegal, invalid or unenforceable under any present or future law applicable to the terms hereof, then and in that event, it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby, and that in lieu of each such clause or provision of this Agreement that is illegal, invalid or unenforceable, such clause or provision shall be judicially construed and interpreted to be as similar in substance and content to such illegal, invalid or unenforceable clause or provision, as the context thereof would reasonably suggest, so as to thereafter be legal, valid and enforceable.

20. <u>Counterparts; Facsimile and Electronic Transmission</u>.  To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature and acknowledgment of, or on behalf of, each party, or that the signature and acknowledgment of all persons required to bind any party, appear on each counterpart.  All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures and acknowledgment of, or on behalf of, each of the parties hereto.  Any signature and acknowledgment page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures and acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature and acknowledgment pages.  Counterparts hereof which are transmitted by facsimile or electronic transmission shall be given the identical legal effect as an original.

21. <u>No Oral Agreements</u>.  In consideration of the modification of the Loan as provided herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, the parties hereto agree that each party's execution of this Agreement constitutes an acknowledgment that such party has read and understands this Agreement, and that it is intended to be part of and is incorporated by reference into each of the Loan Documents; acknowledge receipt of the following notice, and to the extent allowed by law, agree to be bound by the terms of this Agreement and the Notice:

NOTICE:  THIS AGREEMENT AND OTHER DOCUMENTS, IF ANY, HEREIN REQUIRED TO BE EXECUTED REPRESENT THE FINAL AGREEMENT OR AGREEMENTS BETWEEN THE PARTIES AS TO THE SUBJECT MATTER HEREOF AND THEREOF, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  THIS INSTRUMENT MAY BE AMENDED ONLY BY AN INSTRUMENT IN WRITING EXECUTED BY THE PARTIES HERETO.

22. <u>Governing Law</u>.  THE TERMS AND PROVISIONS HEREOF SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN.

23. <u>Effectiveness of the Loan Documents</u>.  Except as expressly modified by the terms and provisions hereof, each of the terms and provisions of the Loan Documents are hereby ratified and shall remain in full force and effect; provided, however, that any reference in any of the Loan Documents to the Loan, any defined terms, or to any of the other Loan Documents shall be deemed, from and after the date hereof, to refer to the Loan, defined terms and to such other Loan Documents, as modified hereby.

[Signature Pages Follow]

IN WITNESS WHEREOF, the undersigned have executed this Agreement to Senior Secured Superpriority Debtor-In-Possession Credit Agreement.

LENDER:

SIMMONS BANK,
an Arkansas state chartered bank

By: _____
Name: Amy Moore
Title:   Senior Vice President

BORROWER:

NITRO FLUIDS, LLC,
a Texas limited liability company

By: _____
Name: Brad Walker
Title:   Chief Restructuring Officer

BORROWER:

NFH Leasing, LLC,
a Texas limited liability company

By: _____
Name: Brad Walker
Title:   Chief Restructuring Officer

BORROWER:

Straitline Pumps, LLC,
a Texas limited liability company

By: _____
Name: Brad Walker
Title:   Chief Restructuring Officer

The Guarantors have signed this Agreement to Senior Secured Superpriority Debtor-in-Possession Credit Agreement to consent to, covenant, agree, represent and warrant to the matters herein expressly respecting each or all of the Guarantors.

GUARANTOR:

NITRO CONSTRUCTION, LLC,
a Texas limited liability company,

By:_____
Name:_____
Title:_____

NITRO DOWNHOLE, LLC,
a Texas limited liability company,

By:_____
Name:_____
Title:_____
