United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 25, 2024
Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

|  |  |
|---|---|
| **In re:** | §    **Chapter 11** |
|  | § |
| **NITRO FLUIDS, LLC,** *et al.* | §    **Case No. 24-60018 (CML)** |
|  | § |
| **Debtors.**[1] | §    **(Jointly Administered)** |
|  | § |

### ORDER APPROVING AMENDED BIDDING PROCEDURES AND GRANTING RELATED RELIEF

Upon the emergency motion, dated September 12, 2024 (ECF No. 275) (the "Motion")[2], of Nitro Fluids, LLC, NFH Leasing, LLC, and Straitline Pumps, LLC, as debtors and debtors in possession (collectively, "Debtors") for entry of an order (the "Amended Bidding Procedures Order") approving the Amended Bidding Procedures, substantially in the form attached hereto as **Exhibit 1** and granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Nitro Fluids, LLC (2119); NFH Leasing, LLC (9218); Straitline Pumps, LLC (4168). The location of the service address for Nitro Fluids, LLC and NFH Leasing, LLC is: 117 Boadway, Nordheim, TX 78141. The location of the service address for Straitline Pumps, LLC: 1314 W. Sonterra Blvd, Ste 401m San Antonio, Texas 75258.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Amended Bidding Procedures, as applicable.

need be provided; and this Court having reviewed the Motion and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

      A.    <u>Amended Bidding Procedures</u>. The Debtors have articulated good and sufficient business reasons for the Court to approve the Amended Bidding Procedures. The Amended Bidding Procedures are fair, reasonable, and appropriate. The Amended Bidding Procedures are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Debtors' business resulting in the highest or otherwise best offers.

      B.    <u>Relief is Warranted</u>. The legal and factual bases set forth in the Motion establish just and sufficient   cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

      1.    All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

      2.    The Debtors are authorized to implement the Amended Bidding Procedures in accordance with the following timeline (as may be modified in accordance with the Amended Bidding Procedures):

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

| Key Event | Deadline |
|---|---|
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | July 15, 2024 |
| Deadline to Object to Cure Costs | July 29, 2024 |
| Deadline to Submit Bids | October 9, 2024 by 5:00 p.m. (prevailing Central Time) |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | 1 business day prior to Auction |
| Auction, if necessary, to be conducted at (i) the offices of Bonds Ellis Eppich Schafer Jones LLP, 420 Throckmorton Street, Suite 1000, Fort Worth, Texas 76102, or (ii) virtually, pursuant to procedures to be announced to bidders | October 11, 2024 at 10:00 a.m. (prevailing Central Time) |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | 1 business day following the Auction |
| Deadline to File Objections to (a) Sale Transactions (other than the Applicable Sale Transaction) and (b) Adequate Assurance of Future Performance | October 18, 2024 |
| Sale Hearing | TO BE SUBSEQUENTLY NOTICED |

3.     The following KLX Stalking Horse Bid Protections are approved in their entirety and shall be payable in accordance with, and subject to the terms of, the applicable Stalking Horse Agreement:

   a.   Stalking Horse Bidder KLX Energy Services ("KLX") shall be granted the right to a Termination Payment comprised of a break-up fee of 3% of the KLX Stalking Horse Bid; and

   b.   Debtors shall not accept a higher and better offer for the assets subject to the KLX Stalking Horse Bid unless such offer exceeds any offer made by KLX for such assets by at least $200,000.00.

4.     The Debtors are authorized, in the exercise of their reasonable business judgment, with the prior written consent of the DIP Lender (as defined in the Amended Bidding Procedures), not to be unreasonably withheld, conditioned, or delayed to designate one or more stalking

horse bidders and enter into purchase  agreements  with Additional Stalking  Horse  Bidders (each  such  agreement,  an "Additional Stalking Horse Agreement"), for the sale of assets (each such group of Assets, an "Additional Stalking Horse Package"), in each case, in accordance with the terms of this Order and the Amended Bidding Procedures.

5. Subject to the terms of this Order and the Amended Bidding Procedures, the Debtors are authorized to offer each Additional Stalking Horse Bidder additional protections, including a break-up fee (the "Additional Stalking Horse Bid Protections"); *provided*, *that*, all Additional Stalking Horse Bid Protections must be negotiated by the Debtors and subject to notice and an opportunity for parties in interest to object.

6. If the Debtors designate an Additional Stalking Horse Bidder, the Debtors shall file with the Court and cause to be published on Eqiq's Website (as defined in the Motion), (a) a notice setting forth the identity of the Additional Stalking Horse Bidder and the material terms of such Additional Stalking Horse Agreement, including the terms of the applicable Additional Stalking Horse Bid Protections (each, a "Notice of Additional Stalking Horse"), (b) a copy of the Additional Stalking Horse Agreement, and (c) a proposed order authorizing and approving the Debtors' provision of the Additional Stalking Horse Bid Protections pursuant to the terms and provisions of the  applicable Additional Stalking  Horse  Agreement  and  the Amended Bidding Procedures (the "Proposed Order").

7. Objections to the provision of Stalking Horse Bid Protections, if any, for any Additional Stalking Horse Bidder (each, a "Bid Protection Objection") shall (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court and served on

Debtors' counsel within seven (7) calendar days after service of the applicable Notice of Stalking Horse.

8. If a timely Bid Protection Objection is filed with respect to an Additional Stalking Horse Agreement in accordance with the Amended Bidding Procedures and this Order, any Additional Stalking Horse Bid Protections provided for under such agreement shall not be deemed approved until the Bid Protection Objection is resolved, either by agreement of the objecting party and the Debtors, or by order of the Court resolving such objection and approving the provision of the Additional Stalking Horse Bid Protections. Nothing herein shall alter the burden of proof with respect to the Additional Stalking Horse Bid Protections.

9. If no timely Bid Protection Objection is filed with respect to an Additional Stalking Horse Agreement in accordance with the Amended Bidding Procedures and this Order, the Debtors may file with the Court, upon certification of counsel, the Proposed Order, which may be entered by the Court without further notice or hearing.

10. Except as specifically authorized in paragraphs 3-4 hereof, absent further order of the Court, no person or entity shall be entitled to any Additional Stalking Horse Bid Protections, expense reimbursement or break-up fee, "topping," termination, or other similar fee or payment by the Debtors for submitting a bid for Debtors' assets, or in any way participating in an auction or the Debtors' sale process.

11. Except as otherwise specified, all notices to be provided pursuant to the Amended Bidding Procedures need only be provided according to the limited notice procedures detailed in the Court's Order (A) Authorizing the Debtors to File a Consolidated List of Creditors and a Consolidated List of the 30 Largest Unsecured Creditors, (B) Authorizing the Debtors to Redact

Certain Personal Identification Information, (C) Authorizing Limited Notice, and (D) Granting Related Relief.

12.     The Debtors are authorized to take all reasonable actions necessary or appropriate to implement the Amended Bidding Procedures in accordance with the terms of this Order and the Amended Bidding Procedures.

### **Reservation of Rights**

13.     Except as otherwise set forth in the Amended Bidding Procedures, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law to modify the Amended Bidding Procedures; waive terms and conditions set forth in the Amended Bidding Procedures with respect to all Potential Bidders; extend the deadlines set forth in the Amended Bidding Procedures; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth in the Amended Bidding Procedures; *provided*, *that*, any modifications shall not be inconsistent with this Order or any other order of the Bankruptcy Court and shall not modify the rights of any party; *provided*, *further*, that any modifications shall not affect the rights of Qualified Bidders in respect of their Good Faith Deposits as set forth in the Bidding Procedures under the heading "Good Faith Deposit."  Subject to the foregoing, the Debtors may provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with the Amended Bidding Procedures and this Order.  All parties reserve their rights to seek Bankruptcy Court relief, including on an expedited basis, with regard to the Auction, the Amended Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

14.     The Debtors are authorized to make non-substantive changes to the Amended Bidding Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

15.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

16.     Except as expressly modified herein, the Order Approving (I)(A) Bidding Procedures, and (B) Assumption and Assignment Procedures; (II) Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; (III) Procedures for De Minimis Asset Sales; and (IV) Related Relief shall remain in full force and effect.

17.     The Debtors are authorized to take all reasonable steps necessary or appropriate to carry out the relief granted in this Order.

18.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


Signed:  September 25, 2024

_____
Christopher Lopez
United States Bankruptcy Judge

**EXHIBIT 1**

**"Revised Amended Bidding Procedures"**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **NITRO FLUIDS, LLC,** *et al.* | § | **Case No. 24-60018 (CML)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

## AMENDED BIDDING PROCEDURES

### Overview

On May 15, 2024, Nitro Fluids, LLC, NFH Leasing, LLC, and Straitline Pumps, LLC (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). These chapter 11 cases have been consolidated for procedural purposes under the lead case set forth in the caption above.

On June 27, 2024, the Bankruptcy Court entered an order (ECF No. 61) (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to solicit bids and approved procedures (the "Bidding Procedures") for the consideration of the highest or otherwise best bids (or any combination of Partial Bids comprising one Qualified Bid) for the Debtors' businesses and assets on the terms and conditions set forth herein.[2]

On [●], 2024, the Bankruptcy Court entered the Order Approving Amended Bidding Procedures and Granting Related Relief (ECF No. [●]) (the "Amended Bidding Procedures Order") which authorized the Debtors to grant stalking horse bid protections for stalking horse bidders on Debtors' business and assets.

KLX Energy Services ("KLX") has submitted a stalking horse bid (the "KLX Stalking Horse Bid"). The Debtors have entered into a stalking horse agreement with KLX (the "KLX Stalking Horse Agreement") for the purchase of certain of Debtors' assets (the "KLX Stalking Horse

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification number, are Nitro Fluids, LLC (2119); NFH Leasing, LLC (9218); Straitline Pumps, LLC (4168). The location of the service address for Nitro Fluids, LLC and NFH Leasing, LLC is: 117 Boadway, Nordheim, TX 78141. The location of the service address for Straitline Pumps, LLC: 13750 San Pedro Ave., Ste. 560, San Antonio, Texas 78232.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Amended Bidding Procedures Order.

Package"). The Debtors have provided KLX with certain protections in the form of (i) a break-up fee in the event of consummation of an alternative transaction (the "Termination Payment") and (ii) an agreement that Debtors will not accept a higher and better offer for the KLX Stalking Horse Package unless such offer exceeds any offer made by KLX for the KLX Stalking Horse Package by at least $200,000.00. The KLX Stalking Horse Bid is subject to higher or better offers submitted in accordance with the terms and conditions of these Amended Bidding Procedures. The Debtors, with the prior written consent of Simmons Bank (the "DIP Lender"), not to be unreasonably withheld, conditioned, or delayed, may enter into separate stalking horse agreements for the purchase of any business or asset not otherwise included in the KLX Stalking Horse Package, with such bid protections to be determined by the Debtors, with the prior written consent of the DIP Lender, not to be unreasonably withheld, conditioned, or delayed.

For all purposes under these Amended Bidding Procedures, KLX shall be considered a Qualified Bidder and the KLX Stalking Horse Bid shall be considered a Qualified Bid. Subject to the other provisions of these Amended Bidding Procedures, in the event that the KLX Stalking Horse Bid is the only Qualified Bid received by the Debtors for the KLX Stalking Horse Package by the Bid Deadline, KLX shall be deemed a Successful Bidder.

The Amended Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Debtors' businesses or assets, subject to an order of the Bankruptcy Court approving such potential sale transactions; (ii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids; (iii) the process for negotiating the bids received; (iv) the conduct of the Auction if the Debtors receive Qualified Bids; (v) the procedure for the ultimate selection of any Successful Bidder and any Back-Up Bidder; and (vi) the process for approval of the Sale Transactions at the applicable Sale Hearing (each as defined herein).

## Reservation of Rights

**Except as otherwise set forth herein, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law to modify these Amended Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; *provided*, *that*, any modifications shall not be inconsistent with the Bidding Procedures Order, the Amended Bidding Procedures Order, or any other order of the Bankruptcy Court and shall not modify the consent or consultation rights of any party; *provided*, *further*, that any modifications shall not affect the rights of Qualified Bidders in respect of their Good Faith Deposits as set forth in these Amended Bidding Procedures under the heading "Good Faith Deposit." Subject to the foregoing, the Debtors may provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with these Amended Bidding Procedures, the Bidding Procedures Order, or the Amended Bidding Procedures Order. All parties reserve their rights to seek Bankruptcy Court relief, including on an expedited basis, with regard to the Auction, these Amended Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).**

## Fiduciary Out

Nothing in these Amended Bidding Procedures will require the Debtors, their managers, CRO, board of managers, or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to these Amended Bidding Procedures, to the extent that any Debtor or such manager, CRO, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law (the "Fiduciary Out").

## Summary of Important Dates

| Key Event | Deadline |
|---|---|
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | July 15, 2024 |
| Deadline to Object to Cure Costs | July 29, 2024 |
| Deadline to Submit Bids | October 9, 2024 by 5:00 p.m. (prevailing Central Time) |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | 1 business day prior to Auction |
| Auction, if necessary, to be conducted at (i) the offices of Bonds Ellis Eppich Schafer Jones LLP, 420 Throckmorton Street, Suite 1000, Fort Worth, Texas 76102, or (ii) virtually, pursuant to procedures to be announced to bidders | October 11, 2024 at 10:00 a.m. (prevailing Central Time) |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | 1 business day following the Auction |
| Deadline to File Objections to (a) Sale Transactions (other than the Applicable Sale Transaction) and (b) Adequate Assurance of Future Performance | October 18, 2024 |
| Sale Hearing | TO BE SUBSEQUENTLY NOTICED |

## Assets To Be Sold

Parties may submit bids for one or more of the Debtors' businesses or assets, including for all or part of the Debtors' businesses or assets (each, a "Partial Bid"), which bids may be combined with other Partial Bids or be considered independently together with the liquidation value (as reasonably determined by the Debtors in good faith) of the Debtors' businesses or assets that are not the subject of the KLX Stalking Horse Bid or other Partial Bid to be deemed a Qualified Bid; *provided*,

*that* Partial Bids for any assets included in the KLX Stalking Horse Package must collectively include at least substantially all of the assets included in the KLX Stalking Horse Package to be deemed a Qualified Bid.

## <u>Designation of Additional Stalking Horse Bidders</u>

The Debtors, in the exercise of their reasonable business judgment, with the prior written consent of the DIP Lender, not to be unreasonably withheld, conditioned, or delayed, may designate one or more stalking horse bidders, in addition to KLX (an "<u>Additional Stalking Horse Bidder</u>"), for one or more of the Debtors' assets not included in the KLX Stalking Horse Package (an "<u>Additional Stalking Horse Bid</u>"), and enter into purchase agreements with Additional Stalking Horse Bidders (each such agreement, an "<u>Additional Stalking Horse Agreement</u>"), for the sale of such assets (each such group of Assets, an "<u>Additional Stalking Horse Package</u>"), in each case, in accordance with the terms of the Bidding Procedures Order, the Amended Bidding Procedures Order, and these Amended Bidding Procedures.  If the Debtors designate an Additional Stalking Horse Bidder, the Debtors shall file with the Court, serve on all parties in interest, and cause to be published on the Epiq Website (as defined in the Motion), (a) a notice setting forth the identity of the Additional Stalking Horse Bidder and the material terms of such Additional Stalking Horse Agreement, including the terms of the applicable Additional Stalking Horse Bid Protections (each, a "<u>Notice of Additional Stalking Horse</u>"), (b) a copy of the Additional Stalking Horse Agreement, and (c) a proposed order authorizing and approving the Debtors' provision of the Additional Stalking Horse Bid Protections pursuant to the terms and provisions of the applicable Additional Stalking Horse Agreement and the Amended Bidding Procedures (the "<u>Proposed Order</u>").

<u>Additional Stalking Horse Bid Protections</u>.  The Debtors may, subject to the terms of the Bidding Procedures Order, the Amended Bidding Procedures Order, and these Amended Bidding Procedures, offer each Additional Stalking Horse Bidder additional protections, including a break-up fee (the "<u>Additional Stalking Horse Bid Protections</u>"); *provided*, *that*, all Additional Stalking Horse Bid Protections must be negotiated by the Debtors, subject to notice and an opportunity for parties in interest to object.  The amount and calculation of such Additional Stalking Horse Bid Protections shall be described in the Notice of Additional Stalking Horse; *provided*, *further*, that any Additional Stalking Horse Bid Protections shall not be inconsistent with any Stalking Horse Bid Protections previously approved under the Amended Bidding Procedures Order.

<u>Objections to and Approval of Designation of Additional Stalking Horse Bidder</u>.  Any objections (each, an "<u>Additional Stalking Horse Objection</u>") to the designation of an Additional Stalking Horse Bidder, including any Additional Stalking Horse Bid Protections to be provided pursuant to the terms and provisions of an Additional Stalking Horse Agreement, must (a) be in writing; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (c) state, with specificity, the legal and factual bases thereof; and (d) be filed with the Court within seven (7) calendar days after service of the applicable Notice of Additional Stalking Horse.

If a timely Additional Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed designation of an Additional Stalking Horse Bidder and the Additional Stalking Horse Bid Protections will not be approved until either the Additional Stalking

Horse Objection is resolved by agreement of the objecting party and the Debtors or by order of the Bankruptcy Court.

**<u>Due Diligence</u>**

The Debtors have posted copies of all material documents related to the Debtors' businesses and assets to the Debtors' confidential electronic data room (the "<u>Data Room</u>").  To access the Data Room, a party must submit to the Debtors' advisors:

(A)     an executed confidentiality agreement in form and substance that is satisfactory to the Debtors (unless such party is already a party to an existing customary confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)     sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine, in their sole discretion, that the interested party (i) has the financial wherewithal to consummate the Sale Transactions, and (ii) intends to access the Data Room for a bona fide purpose consistent with these Amended Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors shall be a "Potential Bidder."  As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; *provided, that,* such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, including that a Potential Bidder does not become a Qualified Bidder, these Amended Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement or the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.  The Debtors may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment, that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the Sale Transactions.

Until the Bid Deadline, and except as otherwise provided herein, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Amended Bidding Procedures) that the Debtors believe in their reasonable business judgment to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to PPHB as the Debtors Investment Banker (contact information below).  In the event that any such additional information is in written form and provided to a Potential Bidder, the Debtors shall simultaneously provide such additional information to all other Potential Bidders by posting it in the Data Room.  Unless prohibited by law or otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder may be terminated if (i) the Potential Bidder does not become a Qualified Bidder, (ii) these Amended Bidding Procedures are

terminated, (iii) the Potential Bidder breaches any obligations under its confidentiality agreement, or (iv) the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' businesses or assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors, in the reasonable business judgment of the Debtors.

Each Qualified Bidder shall be deemed to acknowledge and represent (i) that it has had an opportunity to (x) conduct any and all due diligence regarding the applicable Acquired Assets prior to making a bid and (y) investigate and/or inspect any documents and the applicable Acquired Assets in making its bid; (ii) that it has relied solely upon its own independent review in making its bid; and (iii) that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the applicable Acquired Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Amended Bidding Procedures. The Debtors and their respective estates are not responsible for, and will have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with these Amended Bidding Procedures and the Sale Transactions.

## Non-Binding Indications of Interest

Parties interested in purchasing all or any portion of the Debtors' businesses are encouraged to submit an indication of interest to the Debtors.

Submitting a Non-Binding Indication of Interest does not obligate the interested party to consummate a transaction, submit a formal bid or to participate in the bidding process, nor does it cause such party to be deemed to be a Potential Bidder. It also does not exempt such party from having to submit a Qualified Bid by the Bid Deadline (as defined below) or comply with these Amended Bidding Procedures to participate in any subsequent Auction, all as described below. For the avoidance of doubt, a party that does not submit a Non-Binding Indication of Interest is not precluded from submitting a Qualified Bid by the Bid Deadline.

## Bid Deadline

A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than **October 9, 2024 at 5:00 p.m. (prevailing Central Time)** (the "Bid Deadline"); *provided, that,* the Debtors may extend the Bid Deadline without further order of the Bankruptcy Court subject to providing notice to all Potential Bidders. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the businesses or assets specified in such bid.** Notwithstanding anything to the contrary in these Amended Bidding Procedures, any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the following Debtor representatives:

| Bonds Ellis Eppich Schafer Jones LLP | PPHB LP |
|---|---|
| Joshua Eppich<br>joshua@bondsellis.com<br>Eric T. Haitz<br>eric.haitz@bondsellis.com<br>Ken Green<br>ken.green@bondsellis.com | Raymond ("Ray") L. Brown Jr.<br>rbrown@pphb.com<br>Joe Buchanan<br>jbuchanan@pphb.com |

### **Form and Content of Qualified Bid**

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "<u>Bid</u>"). To constitute a "<u>Qualified Bid</u>" a Bid must include, at a minimum, the following:[3]

i.    <u>Proposed Agreement</u>.  Each Bid must include an executed agreement (the "<u>Proposed Agreement</u>") for the acquisition of all or some of the businesses or assets of the Debtors, marked with a redline to show the specific changes to the Proposed Agreement to the Applicable Stalking Horse Agreement distributed by the Debtors to Potential Bidders.  The Proposed Agreement shall:

      a.    include a complete set of all disclosure schedules and exhibits thereto; and

      b.    not condition the closing of the proposed Sale Transaction on the receipt of any third party approvals (excluding such approvals required by the Bankruptcy Court or governmental and/or regulatory approvals).

ii.    <u>Purchase Price; Form of Consideration; Cash Requirements; Assets; Assumed Liabilities; Credit Bid</u>.  Each Bid must clearly set forth, as applicable:

      a.    <u>Purchase Price</u>.  Each Bid must clearly identify the purchase price to be paid (the "<u>Purchase Price</u>") and specify the aggregate amount of cash and other consideration being offered.

      b.    <u>Cash Requirements</u>.  Each Bid, including any Credit Bid (as defined below) must provide cash consideration sufficient to satisfy the payment of the Termination Payment in cash in full (the "<u>Cash Consideration Amount</u>")

---

[3]    The Debtors may waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction so long as any such waiver is not materially inconsistent with these Amended Bidding Procedures *provided*, *that*, any such modifications shall not be inconsistent with the Bidding Procedures Order, the Amended Bidding Procedures Order, or any other order of the Bankruptcy Court and shall not modify the consent of any party; *provided*, *further*, that any modifications shall not affect the rights of Qualified Bidders in respect of their Good Faith Deposits as set forth in these Amended Bidding Procedures under the heading "Good Faith Deposit."

and, with respect to any Credit Bid, must also pay all obligations secured by senior liens on the applicable assets.

c.  <u>Assets / Business Purchased</u>: Each Bid must, in the Proposed Agreement, clearly identify the particular assets or business the Potential Bidder seeks to acquire from the Debtors (the "<u>Applicable Purchased Assets</u>"). The Bid must clearly state the allocation of Purchase Price among the assets the Potential Bidder seeks to acquire from the Debtors.

d.  <u>Assumed Liabilities</u>: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume. For the avoidance of doubt, a Qualified Bid may include a bid for less than all or substantially all of the Debtors' liabilities.

e.  <u>Credit Bid</u>: Persons or entities holding a valid and perfected security interest in the Debtors' assets may submit a credit bid (a "<u>Credit Bid</u>") on such assets, to the extent permitted by applicable law or any Bankruptcy Court orders, and subject to any applicable limitations set forth in the Intercreditor Agreements.

iii.  <u>Unconditional Offer / Contingencies</u>.  A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of the Sale Transactions.

iv.  <u>Proof of Financial Ability to Perform</u>.  Each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transactions including, without limitation, ability to post replacement letters of credit, as applicable, and such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' reasonable business judgment, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sale Transactions in a timely manner.

v.  <u>Designation of Contracts and Leases</u>.  Each Bid must identify with particularity (i) each and every executory contract and unexpired lease that the Potential Bidder

seeks to assume and receive an assignment; and (ii) each other contract and lease of the Debtors that the Potential Bidder seeks to assume and receive an assignment.

vi.  <u>Required Approvals</u>.  A statement or evidence (i) that the Potential Bidder has not conditioned its Bid on (a) obtaining financing, (b) any internal approval, (c) the outcome or review of unperformed due diligence, or (d) regulatory contingencies (except as otherwise provided in this section), (ii) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (iii) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the Applicable Sales Transaction, if any, and the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (iv) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors.  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel.

vii.  <u>Disclosure of Identity and Corporate Authorization</u>.  Each Bid must (i) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transactions), and the complete terms of any such participation, and (ii) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Amended Bidding Procedures.

viii.  <u>No Entitlement to Expense Reimbursement or Other Amounts</u>.  Each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

ix.  <u>Disclosure of Connections</u>.  Each Bid must fully disclose any connections or agreements with the Debtors, any other known Potential Bidder and/or any officer or director of the Debtors.

x.  <u>Joint Bids</u>.  The Debtors may approve joint Bids in their sole and reasonable business judgment on a case-by- case basis.

xi.  <u>Representations and Warranties</u>.  Each Bid must include the following representations and warranties.

a.      a statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the applicable business or asset prior to submitting its Bid;

b.      a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the businesses or assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the businesses or assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

c.      a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid (or any combination of Partial Bids comprising one Qualified Bid) after the Successful Bid with respect to the applicable business or asset;

d.      a statement that the Potential Bidder has not (i) engaged in any collusion with respect to the submission of any bid or the Auction, (ii) coordinated or joined with any other party on a bid or bids, or (iii) took any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted as set forth herein;

e.      a statement that all proof of financial ability to consummate the Applicable Sale Transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

f.      a statement that the Potential Bidder agrees to be bound by the terms of the Amended Bidding Procedures.

xii.      A Potential Bidder must also accompany its Bid with:

a.      a cash deposit in the amount of 10% of the proposed purchase price (a "<u>Good Faith Deposit</u>"), unless, with respect to assets which are not applicable Acquired Assets, otherwise agreed to by the Debtors and a Potential Bidder; *provided, that,* a Potential Bidder submitting a Credit Bid will not be required to accompany its Bid with a Good Faith Deposit for any portion of the Purchase Price that is a Credit Bid;

b.      the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

c.      a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required

to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

For the avoidance of doubt, a Stalking Horse Bidder shall be deemed a Qualified Bidder, and a Stalking Horse Bid shall be deemed a Qualified Bid for purposes of these Amended Bidding Procedures, which status cannot be abrogated by subsequent amendment or modification to these Amended Bidding Procedures.

## Good Faith Deposit

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to a customary and reasonable escrow agreement to be provided by the Debtors.  To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price.  If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment.  For the avoidance of doubt, and notwithstanding anything to the contrary in these Amended Bidding Procedures or any Court order to the contrary, any Good Faith Deposit by a Qualified Bidder shall only be for purposes of this process.  No party, including any prepetition lenders, postpetition lenders, or the DIP Lender have or shall have any lien, claim, or right with respect to the Good Faith Deposit, and such funds shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Amended Bidding Procedures.  Notwithstanding the foregoing, the Good Faith Deposit, including the amount thereof, and any remedies against a Stalking Horse Bidder shall be governed by the applicable Stalking Horse Agreement.

## Review of Bids; Designation of Qualified Bids

The Debtors will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their reasonable business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Debtors to meet the requirements set forth herein will be considered a "Qualified Bid" and any bidder that submits a Qualified Bid will be considered a "Qualified Bidder."

By no later than **one (1) business day prior to the Auction** (the "Qualified Bid Deadline"), the Debtors shall determine, in their reasonable business judgment, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid.  The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

In evaluating the Bids, the Debtors may take into consideration the following non-exhaustive factors:

1. the amount of the purchase price and Credit Bid, as applicable, set forth in the Bid (*provided, that,* for purposes of evaluating competing bids, and except with respect to the requirement that each Bid must provide the Cash Consideration Amount,

every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2.    the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed;

3.    the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates;

4.    any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including replacement letters of credit;

5.    the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6.    the impact on employees and employee claims against the Debtors;

7.    the impact on trade creditors; and

8.    any other factors the Debtors may deem relevant, consistent with their fiduciary duties.

A Bid that contemplates the liquidation of some or all the Debtors' businesses or assets shall not be disqualified from being a Qualified Bid solely for that reason. The Debtors reserve the right to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; *provided, that,* any Qualified Bid may be improved at the Auction as set forth in these Amended Bidding Procedures.

Subject to the terms of the Bidding Procedures Order, the Amended Bidding Procedures Order, and these Amended Bidding Procedures, any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates and the right under applicable nonbankruptcy law to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured. Any Qualified Bidder portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured. Any Qualified Bidder intending to credit bid all or a portion of the value of such Qualified Bidder's claim shall provide notice thereof to the Debtors at least two (2) business days prior to the Auction.

**Failure to Receive Qualified Bids Other Than Stalking Horse Bid**

If no Qualified Bid (other than the Stalking Horse Bids) is received by the Qualified Bid Deadline, the Debtors will not conduct the Auction with respect to the applicable Acquired Assets, and shall file a notice with the Bankruptcy Court indicating that no Auction will be held with respect to the applicable Acquired Assets and the Stalking Horse Bidder will be named the Successful Bidder for the Applicable Acquired Assets. The Debtors shall also publish such notice on the website of their proposed claims and noticing agent, Epiq Corporate Restructuring, located at https://dm.epiq11.com/case/nitrofluids/info.

**Auction Procedures**

If the Debtors receive two or more Qualified Bids with respect to the applicable Acquired Assets, the Debtors shall conduct the Auction on **October 11, 2024, beginning at 10:00 a.m. (prevailing Central Time) at (i) the offices of Bonds Ellis Eppich Schafer Jones LLP, 420 Throckmorton Street, Suite 1000, Fort Worth, Texas 76102, or (ii) virtually, pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Debtors and upon notice to all parties in interest**. Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith. In addition, only the professionals and/or other representatives of the Qualified Bidders, the Debtors shall be permitted to attend and observe the Auction.

The following auction rules shall apply to the Auction to promote a spirited and robust auction (the "Auction Rules"). All bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction (each, an "Overbid") will be disclosed to all other Qualified Bidders participating in the Auction. Each Qualified Bidder will be permitted what the Debtors reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded. The starting bid (the "Starting Bid") shall be the highest or best Qualified Bid, as determined by the Debtors. The Debtors shall notify all Qualified Bidders at least twenty-four (24) hours prior to the Auction what Qualified Bid or combination of Qualified Bids will be the Starting Bid. If the Starting Bid includes non-cash consideration, the Debtors shall notify all Qualified Bidders of the value allocated to such non-cash consideration at least two (2) or more business days prior to the Auction. If a Stalking Horse Bid is selected as the Starting Bid, any Overbid shall include the amount provided for in the Stalking Horse Bid(s), *plus* the Stalking Horse Bid Protections.

The Debtors shall notify all Qualified Bidders of any proposed amendments or modifications to the Auction Rules at least twenty-four (24) hours prior to the Auction. Pursuant to 18 U.S.C. §§ 156 and 157, bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) coordinating or joining with any other party on a bid or bids, or (iii) taking any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be

permitted as set forth herein.  Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any of the foregoing prohibited actions and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; *provided, that,* parties may speak with clients or parties necessary to place their bid or increase it so long as such individuals are advised of the confidentiality restriction.

To the extent the Debtors conduct multiple auctions for different subgroupings of the Debtors' assets/businesses (each, a "Sub-Auction") at any Auction and a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of assets/businesses that may include specific assets or businesses which were the subject of an earlier Sub- Auction.  If one or more Partial Bids(s) for acquiring only the certain of the Debtors' assets or businesses are determined to be Qualified Bids, then the Debtors shall first conduct a Sub-Auction for each of these assets or businesses that has at least one Qualified Bid pursuant to the Auctions Rules.  The Debtors may, in the exercise of their reasonable business judgment, in consultation with the Official Committee of Unsecured Creditors (the "UCC") and with the consent of the DIP Lender, not to be unreasonably withheld, conditioned, or delayed, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "Reserve Sub-Auction Bid" and the bidder submitting such bid, a "Reserve Sub-Auction Bidder").  The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction as a back-up bid (each, a "Back-Up Sub-Auction Bid" and the bidder submitting such bid, a "Back-Up  Sub-Auction Bidder").  After the designation of any Reserve Sub-Auction Bid, the Debtors shall conduct an Auction for the Debtors' businesses and assets on a consolidated or semi- consolidated basis pursuant to the Auction Rules.  If, upon the completion of such Auction, the Debtors, in the exercise of their reasonable business judgment, in consultation with the UCC and with the consent of the DIP Lender, not to be unreasonably withheld, conditioned, or delayed, determine that pursuing a Sale Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result a higher or otherwise better value of the Debtors' businesses than pursuing a Sale Transaction pursuant to the highest or otherwise best Bid received in the Auction of the Debtors' assets or business on a consolidated or semi- consolidated basis, then the Debtors may declare the Reserve Sub-Auction Bid(s) as Successful Bid(s) (and the Reserve Sub-Auction Bidder(s) as Successful Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)).

The Debtors may, in the exercise of their business judgment, in consultation with the UCC, and with the consent of the DIP Lender, not to be unreasonably withheld, conditioned, or delayed, identify the highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as the successful bid for the respective business or assets to be acquired (each, a "Successful Bid" and the bidder submitting such bid, a "Successful Bidder").  The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified

above) as a back-up bid (a "Back-Up Bid" and the bidder submitting such bid, a "Back-Up Bidder").

Notwithstanding anything herein to the contrary, the Debtors will conduct the Auction on an open basis and shall not require any Qualified Bidders submit their last and final bids on a "blind" basis. As such, in the Auction process, all Qualified Bidders shall have the right, but not direction, in their sole and absolute discretion, to overbid bids made and alternative transactions proposed by any other Qualified Bidder.  Before determining that a bidder other than KLX is the Successful Bidder with respect to the KLX Stalking Horse Package, the Debtors shall notify KLX of their intent to make such a determination, shall disclose to KLX the applicable competing bid, and shall in good faith inform KLX of the minimum changes required such that the Debtors would consider such modified Stalking Horse Bid, in the exercise of their good faith business judgment, the highest or otherwise best offer with respect to the KLX Stalking Horse Package.  If KLX determines to modify its bid to become the highest or otherwise best bid in the judgment of the Debtors with respect to the KLX Stalking Horse Package, any competing bidder will be given a similar opportunity to modify its bid, with this back and forth process continuing until there is a Successful Bidder.

Within one (1) business day after the Auction, or as soon as reasonably practicable thereafter, each Successful Bidder shall (i) submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted and (ii) unless otherwise agreed in the purchase agreement between the Debtors and a Successful Bidder, submit by transfer of immediately available funds to an account identified by the Debtors any amount required to increase the Successful Bidder's Good Faith Deposit to an amount equal to ten percent (10%) of the Purchase Price contained in the Successful Bid, if the amount of the Good Faith Deposit previously delivered by the Successful Bidder is less than such amount.  For the avoidance of doubt, and notwithstanding anything to the contrary in these Amended Bidding Procedures or any Court order to the contrary, any such increase to the Good Faith Deposit by a Qualified Bidder to such designated account shall only be for purposes of this process.  No party, including any prepetition lenders, postpetition lenders, or the DIP Lender have or shall have any lien, claim, or right with respect to such funds which shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Amended Bidding Procedures.  A Successful Bid may not be assigned to any party without the consent of the Debtors, in consultation with the UCC, and the consent of the DIP Lender, which consent shall not be unreasonably withheld, conditioned, or delayed.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors reserve the right to and may reject such Qualified Bid(s) if such Qualified Bid(s), in the Debtors' reasonable  business  judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Amended Bidding Procedures, or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Debtors and their estates.

## Post-Auction Process

Within one (1) business day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Bankruptcy Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

Within two (2) business days after the Auction, the Debtors shall return the Good Faith Deposit of any bidder, together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder.  Within two (2) business days after the consummation of a Sale Transaction with an applicable Successful Bidder, the Debtors shall return the Good Faith Deposit of each corresponding Back-Up Bidder.  Upon the authorized return of any such Good Faith Deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

Each Successful Bidder's Good Faith Deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of the Sale Transaction.

In addition to the foregoing, the Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable  (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate the Sale Transactions according to these Amended Bidding Procedures or (iii) the Qualified Bidder (a) engages in any collusion with respect to the submission of any bid or the Auction, or (b) coordinates or joins with any other party on a bid or bids (except as permitted by the Debtors); or (iv) violates the provisions of Bankruptcy Code section 363.  In addition to receipt of a Good Faith Deposit, the Debtors specifically reserve the right to seek all additional available damages from a defaulting Successful Bidder.

## Notices Regarding Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## Sale Objections and Hearing

Objections to the Sale Transactions (each, a "Sale Objection"), shall:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and if applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Bankruptcy Court; and (vi) be served upon the Debtors, DIP Lender, the UCC, and any affected proposed purchaser by October 18, 2024 for all Sale Transactions (the "Sale Objection Deadline"); *provided, that,* the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment upon notice to each Successful

Bidder(s).  If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Bankruptcy Court at the applicable Sale Hearing.

An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the applicable sale, or to the consummation and performance of a sale transaction contemplated by a purchase agreement between the Debtors and a Successful Bidder, including the transfer of the Debtors' business to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code.  Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code.  Any objection filed after the Sale Objection Deadline will not be considered by the Court.

### **Consent to Jurisdiction and Authority as Condition to Bidding**

All Potential Bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Amended Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; (ii) waived any right to a jury trial in connection with any disputes relating to these Amended Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; and (iii) consented to the entry of a final order or judgment in any way related to these Amended Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.